600 A.2d 650

**In re TAX CLAIM BUREAU OF BEAVER COUNTY TAX SALE SEPTEMBER 10, 1990 re Beaver County Tax Parcel No. 62-201-0320.P00 Sales 90-1145.**

**Appeal of Sheila HICKS.**

Commonwealth Court of Pennsylvania.

Argued Oct. 10, 1991.

Decided Dec. 3, 1991.

Timothy Finn, for appellant.

Mary L. David, Asst. Sol., for appellee.

Before PELLEGRINI and BYER, JJ., and NARICK, Senior Judge.

PELLEGRINI, Judge.

Sheila Hicks (Hicks) appeals from an order of the Court of Common Pleas of Beaver County which denied her exceptions to the upset tax sale of her property.

Hicks and her husband, Roger L. Hicks, acquired an 11–acre tract of unimproved property, identified as Beaver County Tax Parcel No. 62–201–0320.POO and located in Greene Township, Beaver County, Pennsylvania, in 1984 as tenants by the entireties. In 1986, after separating from her husband, Hicks moved first to New Brighton, Pennsylvania and then to St. Cloud, Florida. In 1987 she obtained a Florida divorce which did not include a distribution of marital property.

In 1988 the subject property was exposed for upset tax sale because taxes on the property had not been paid since 1986. The Tax Claim Bureau (Bureau) of the County of Beaver sent by certified mail notice of the impending tax sale to Hicks at her last known address, the former marital residence at R.D. # 2, Box 311, Hookstown, Pennsylvania 15050, where Roger Hicks was residing. The Bureau also posted the property and advertised the tax sale.

On August 18, 1988 Hicks, who had learned of the tax sale through a friend, filed a petition for special relief at a divorce action commenced in Beaver County by Roger Hicks for the equitable distribution of marital property,[1] requesting that the subject property be removed from the 1988 Tax Sale list. The petition, which identified her as a resident of St. Cloud, Florida, was granted.

In 1989 the Bureau again sent by certified mail notice of the tax sale to Hicks at the Hookstown address. On August 10, 1989 Hicks again filed a petition for special relief at the pending divorce case, requesting that the subject property be removed from the 1989 Tax Sale list. Within this petition, Hicks was again identified as a resident

1. As a result of the Pennsylvania equitable distribution, Hicks was ultimately awarded the subject property and Roger Hicks was awarded the former marital residence.

of St. Cloud, Florida. By order dated August 10, 1989 the trial court stayed the sale until the following year.

In 1990 the Bureau employed the identical mailing procedure as in 1988 and 1989. A certified mailing notifying Hicks of the tax sale was returned to the Bureau marked "not deliverable as addressed, unable to forward." Subsequently, the Bureau posted a second notice of tax sale by regular mail which was addressed to Hicks at the Hookstown address. This time, however, Hicks did not file any petitions.

On September 10, 1990 the subject property, delinquent taxes on which totaled $246.68, was sold to a third party for $500.00. Following the sale, the Bureau posted a certified mailing, which was later returned to the Bureau, addressed to Hicks at the Hookstown address, notifying her of the actual sale of her property. On September 18, 1990 the trial court entered a Decree Nisi authorizing the tax sale conveyance of the subject property.

■ On October 17, 1990 Hicks filed exceptions to the Decree Nisi, contending that she did not have notice of the tax sale as required by the Real Estate Tax Sale Law (Tax Law), Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§ 5860.601–5860.803 (Supp.1986). Following a hearing, the trial court found that Hicks had had actual notice of the tax sale and concluded that the Bureau satisfied the notice requirements because it had made a reasonable effort to provide actual notice to Hicks in accordance with Section 602 of the Tax Law, 72 P.S. § 5860.602. Hicks' appeal to this Court followed.[2]

■ Hicks contends that the trial court erred in finding that the Bureau made a reasonable effort to ascertain her

2. Our scope of review is limited to determining whether the trial court abused its discretion, rendered a decision with lack of supporting evidence, or clearly erred as a matter of law. *Chester County Tax Claim Bureau v. Griffith,* 113 Pa.Commonwealth Ct. 105, 536 A.2d 503 (1988).

whereabouts.[3] The notice provisions of the Tax Law provide as follows:

(a) At least thirty (30) days prior to any scheduled sale the bureau shall give notice thereof, not less than once in two (2) newspapers of general circulation in the county, if so many are published therein, and once in the legal journal, if any, designated by the court for the publication of legal notices. Such notice shall set forth (1) the purposes of such sale, (2) the time of such sale, (3) the place of such sale, (4) the terms of the sale including the approximate upset price, (5) the descriptions of the properties to be sold as stated in the claims entered and the name of the owner.

.    .    .    .    .

(e) In addition to such publications, similar notice of the sale shall also be given by the bureau as follows:

(1) At least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by this act.

(2) If return receipt is not received from each owner pursuant to the provisions of clause (1), then, at least ten (10) days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes. It shall be the duty of the bureau to determine the last post office address known to said collector and county assessment office.

(3) Each property scheduled for sale shall be posted at least ten (10) days prior to the sale.

3. In a tax sale case, the Bureau has the burden of proving compliance with the statutory notice provisions of the Tax Law. *Geier v. Tax Claim Bureau of Schuylkill County*, 131 Pa.Commonwealth Ct. 321, 570 A.2d 134 (1990), *aff'd*, 527 Pa. 41, 588 A.2d 480 (1991).

Section 602 of the Tax Law, 72 P.S. § 5860.602. In 1986 additional notification requirements were added which are now set forth in Section 607a of the Tax Law, 72 P.S. § 5860.607a:

> (a) When any notification of a pending tax sale or a tax sale subject to court confirmation is required to be mailed to any owner, mortgagee, lienholder or other person or entity whose property interests are likely to be significantly affected by such tax sale, and such mailed notification is either returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt of such notification by the named addressee or is not returned or acknowledged at all, then, before the tax sale can be conducted or confirmed, the bureau must exercise *reasonable efforts* to discover the whereabouts of such person and notify him. The bureau's efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property. When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in this act. (Emphasis added).

The requirement that a tax claim bureau make reasonable efforts to locate the landowner whose property has been exposed for tax sale in order to comply with notice requirements of the Tax Law was presaged by our Supreme Court in *Tracy v. County of Chester, Tax Claim Bureau,* 507 Pa. 288, 489 A.2d 1334 (1985); *see also Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). In *Tracy,* the partners in a land development

company sought to set aside a tax sale of the company's property, contending that the tax claim bureau did not make a reasonable effort to effect actual notice of the sale after mailed notice had not been delivered due to an incorrect address. The Supreme Court, in setting forth the "reasonable effort" requirement, rationalized as follows:

> Somehow, over the years, taxing authorities have lost sight of the fact that it is a momentous event under the United States and the Pennsylvania Constitutions when a government subjects a citizen's property to forfeiture for the non-payment of taxes. We have had occasion before to note that we hold no brief with wilful, persistent and long standing tax delinquents, but at the same time, we have also observed that the "strict provisions of the Real Estate Tax Sale Law were never meant to punish taxpayers who omitted through oversight or error ... to pay their taxes." *Ross Appeal*, 366 Pa. 100, 107, 76 A.2d 749 (1950). As this Court stated in *Hess v. Westerwick*, "the purpose of tax sales is not to strip the taxpayer of his property but to insure the collection of taxes." 366 Pa. 90, 98, 76 A.2d 745, 748 (1950). The collection of taxes, however, may not be implemented without due process of law that is guaranteed in the Commonwealth and federal constitutions; and this due process, as we have stated here, requires at a minimum that an owner of land be actually notified by government, if reasonably possible, before his land is forfeited by the state.

507 Pa. at 296, 489 A.2d at 1339. Because reasonable efforts to effect actual notice were not carried out in *Tracy*, the Supreme Court concluded that the tax sale must be set aside.

■ Our courts have consistently held that the "reasonable effort" requirement of *Tracy* must be met. Although the Bureau is not required to make "extraordinary efforts" to discover the identity and address of a person whose property interests are likely to be significantly affected by a tax sale, due process requires the tax claim bureau to do more than merely check telephone directories

and the records maintained by the offices of the recorder of deeds and prothonotary and the county assessment office. *See, e.g., Pivirotto v. City of Pittsburgh*, 515 Pa. 246, 528 A.2d 125 (1987) (checking files in the the governmental body's own possession would have been a reasonable effort);[4] *In re Upset Price Tax Sale*, 127 Pa.Commonwealth Ct. 400, 561 A.2d 1301 (1989) (checking guardianship appointment documents for the identity of the guardian of an incompetent property owner would have been reasonable to insure that the property owner's interests would be protected); *Schreiber v. Tax Claim Bureau of the County of Butler*, 117 Pa.Commonwealth Ct. 588, 545 A.2d 950 (1988) (tax claim bureau could have made a reasonable effort to check mortgage records and then the telephone directory); and *Rossi v. Indiana County Tax Claim Bureau*, 90 Pa.Commonwealth Ct. 255, 494 A.2d 526 (1985) (ordinary common sense business practices, as well as reasonable efforts under *Tracy*, should have led the tax claim bureau to mail at least a second notice to a joint landowner at the address provided on his deeds).

■ The Bureau, in its attempt to show strict compliance with the Tax Law, argues that it properly posted the subject property, properly advertised the tax sale, and sent proper notice to Hicks,[5] all in accordance with the Tax Law. The Bureau also contends that when the mailed notices to Hicks were returned, it made additional notification efforts, as required by Section 607a of the Tax Law, 72 P.S. § 5860.-607a, by contacting the local tax collector and checking the records in the offices of the prothonotary and recorder of deeds, and the county assessment office. The Bureau testified that Hicks' last known address at R.D. # 2, Box 311,

4. Even though *Pivirotto* addressed the issue of notice in the context of the condemnation of a building, because both condemnation notices and tax sale notices involve a governmental taking of private property, the same due process safeguards apply. 515 Pa. at 253, 528 A.2d at 129.

5. Hicks apparently does not dispute that the Bureau met the posting and advertising requirements.

Hookstown, Pennsylvania 15050, was obtained from the records that it had examined.

Our review of the record, however, leads us to the conclusion that the Bureau did not make a reasonable effort to locate Hicks' whereabouts. When the first certified mailing to the Hookstown address was returned undelivered, the Bureau was put on notice that that address was not Hicks' correct address. In the course of making additional inquiries after the certified mailing was returned, the Bureau should have found Hicks' Florida address in the Domestic Relations records when it was checking the dockets and indices in the prothonotary's office. It failed to do so.

More importantly, the Bureau had copies of Hicks' 1988 and 1989 petitions for special relief *in its own file on the subject property* by virtue of the trial court orders staying the tax sale of Hicks' property. The petitions not only contained Hicks' correct address, but were also accompanied by two letters from Hicks' local divorce attorney. The Bureau could have easily notified Hicks directly or indirectly through her attorney. The Bureau, however, automatically sent by regular mail a second notice of tax sale to Hicks' former address in Hookstown, Pennsylvania even though it admitted that it was aware of the Florida address. Accordingly, the Bureau's efforts to notify Hicks of the tax sale were not reasonable as envisioned under the Tax Law.

Hicks' nonpayment of delinquent taxes is inexcusable, especially in light of the two stays she received from the previous tax sales. However, despite her conduct, the Bureau is still required to notify her as an interested property owner so that the due process requirements imposed upon the Bureau are met. Because sufficient evidence does not exist to support the trial court's finding that the Bureau's efforts to notify Hicks of the tax sale were reasonable, we will reverse.

## ORDER

AND NOW, this 3rd day of December, 1991, the order of the Court of Common Pleas of Beaver County dated February 20, 1991, is hereby reversed.