## Bucks County Tax Claim Bureau v. Mallard Park, Inc.

*Susette D. Bonfigilio,* for petitioner.

*Albert O. Breinig,* for respondents Mallard Park, Inc., Joseph Cosden and Craig P. Sanford.

*Robert L. White,* for respondent Bucks County Tax Claim Bureau.

BIESTER, JR., *J.,* July 15, 1993—This case arises out of a tax sale conducted by the Bucks County Tax Claim Bureau ("Bureau") on November 10, 1992, in

which the land and premises located at 3 Terry Drive, Newtown Township, Bucks County, Pennsylvania, owned by Commerce Bank, N.A. ("petitioner"), 1701 Route 70 East, Cherry Hill, New Jersey, were sold to Mallard Park, Inc., Joseph Cosden, and Craig P. Sanford ("buyers at tax sale"). The buyers at tax sale paid an upset price in the amount of $118,261.25 for the property. Thereafter, petitioner filed the present action with this court seeking to set aside and invalidate the tax sale and to obtain injunctive and other related relief. Pursuant to a consent order, signed by petitioner, the buyers at tax sale, the Bureau and the Honorable Kenneth G. Biehn on February 18, 1992, the parties stipulated that the petition in question and its accompanying pleadings were deemed to constitute the filing of objections and exceptions to the tax sale. A hearing was held before this court on January 21, 22 and February 16, 1993. All parties subsequently filed proposed findings of fact and conclusions of law with this court. Upon consideration of the notes of testimony and the parties' proposed findings, we enter the following

## FINDINGS OF FACT

(1) The subject property, Bucks County Tax Parcel no. 29-10-118, is located at the intersection of Terry Drive and Newtown-Yardley Road within an industrial commons in Newtown Township, Bucks County. The property is improved with a two-story brick, commercial office building, approximately 28,000 square feet. N.T. 1/21/93, p. 214.

(2) Petitioner became the owner of the subject property as a result of a mortgage foreclosure and sheriff's sale which took place in February of 1992. N.T. 1/21/93, p. 216.

(3) Title to the subject property was conveyed to petitioner by way of sheriff's deed dated February 14, 1992, and recorded in the Bucks County Recorder of Deeds Office at deed book 422, page 645. Exhibit B-9.

(4) That deed designates the grantee of the property and its address as follows: Commerce Bank, N.A., 1701 Route 70 East, Cherry Hill, N.J. 08034. Exhibit B-9.

(5) In addition, a realty transfer tax statement of value form filed by petitioner was recorded in the Bucks County Recorder of Deeds on March 4, 1992. As required therein, petitioner specified its address and the name and address of an individual to whom any and all correspondence could be directed; *i.e.,* "Patrick J. Casey c/o Jubanyik, Varbalow, Tedesco, Shaw & Schaffer, 105 South 12th Street, Philadelphia, PA 19107." Exhibit P-16.

(6) Prior to said conveyance, Newtown Enterprises, Inc. was the record owner of the property in question. Exhibit B-9.

(7) On January 15, 1991, the Bureau filed a report indicating that $32,500.61 was due in delinquent 1990 taxes and penalties for the subject property. N.T. 1/21/93, p. 6.

(8) According to the Bureau, a notice of filing of return and entry of claim for the delinquent 1990 taxes was sent sometime in May of 1991 by return receipt, certified mail to the prior owner, Newtown Enterprises, Inc., 1918 Garden Court, Langhorne, PA 19047. N.T. 1/21/93, p. 7.

(9) The Bureau received a return receipt card addressed to Newtown Enterprises, Inc., signed in the "signature-agent" box and dated 5/24/91. Exhibit B-1.

(10) On February 14, 1992, petitioner's real estate loan administration department, managed by Mr. John

Robert Gerard, became responsible for the property in question. N.T. 1/21/93, pp. 203 and 217.

(11) Mr. Gerard assigned the file to Ms. Colleen Boyd, a loan administration supervisor for petitioner. N.T. 1/21/93, p. 218.

(12) Prior to the loan administration department's being assigned to manage this property, the loan origination department, per Teresa Kirby, had handled the loan file. N.T. 1/21/93, p. 221.

(13) Ms. Kirby administered the sheriff's sale in February of 1992 by which petitioner obtained the property. N.T. 1/22/93, pp. 48 and 57.

(14) Ms. Kirby's employment with petitioner was terminated at the end of May, 1992. N.T. 1/21/93, p. 222.

(15) The tax collector's office placed a lien on the subject property on January 15, 1992, in the amount of $36,869.66 for taxes and penalties owed for 1991. N.T. 1/21/93, p. 9.

(16) The Bureau addressed the notice of filing of return and entry of claim for the delinquent 1991 taxes to "Commerce Bank, N.A., 1701 Route 70 East, Cherry Hill, New Jersey 08034." N.T. 1/21/93, p. 10 and exhibits B-2, B-2A.

(17) The return receipt card accompanying the 1991 notice of claim was signed by Joseph Macarone, an employee of petitioner's, and was dated June 1, 1992. N.T. 1/21/93, pp.10 and 88 and exhibit B-2.

(18) Mr. Macarone signed the return receipt card in the box marked "signature-agent." Exhibit B-2.

(19) The 1991 notice of claim included the following statements: "[i]f you pay this tax claim before July 1, 1993, your property will not be sold. If you pay this claim after July 1, 1993, but before actual sale,

your property will not be sold but will be listed on advertisements for such sale." Exhibit B-2A.

(20) The 1991 notice of claim contained no mention of the outstanding 1990 taxes due on the subject property. N.T. 1/21/93, p. 96.

(21) On February 20, 1992, Mr. Louis P. Chiarlanza, an assistant vice-president collection officer for petitioner, prepared a partial charge off request to reduce the principal balance of the real estate loan pertaining to the property in question to comply "with current fair value." He noted therein that the following taxes were due for the property in question: 1990—$35,000 and 1991—$37,000. Exhibit R-8.

(22) Petitioner's board of directors approved this charge off request on March 24, 1992. N.T. 1/22/93, p. 64.

(23) A copy of this partial charge off request was found in the loan administration department's file. N.T. 1/22/93, p. 64.

(24) In March or April of 1992, Ms. Boyd phoned the tax collector's office and was told that both the 1991 and 1992 taxes were outstanding on the property. N.T. 1/22/93, p. 117.

(25) On June 12, 1992, the tax collector for Newtown Township, Anthony Rubini, prepared a tax certificate verifying the amount of taxes owed for 1991 and 1992. N.T. 1/22/93, pp. 104-5 and exhibit P-8.

(26) The tax certificate indicated that the 1991 taxes had not been paid, were "liened," and that petitioner should call "Bucks County Tax Claim @ 348-6000" for the latest amount due. The certificate also indicated that over $9,000 in taxes were outstanding for 1992 and that such taxes were due on June 30, 1992. Exhibit P-8.

(27) In late July, 1992, Ms. Boyd wrote the Newtown Township tax collector to inform him that petitioner held the mortgage on the subject property and that any notification regarding the non-payment of taxes and/or other assessments should be directed to petitioner pursuant to New Jersey law. N.T. 1/22/93, p. 34 and exhibit R-3.

(28) The tax certification was found in the loan administration department's file in late August or early September of 1992 at which time Mr. Gerard instructed Ms. Boyd to immediately contact the appropriate authorities to obtain the pertinent figures and to find out how to pay the taxes due. N.T. 1/22/93, p. 69.

(29) Ms. Boyd called the tax collector's office and requested a copy of the county and township tax bill that had gone out in April of 1992. Upon receiving a copy of that bill, which had been addressed to Newtown Enterprises, Inc, Ms. Boyd filled out a check request form on August 31, 1992, for $39,963.61 and forwarded such to the accounts payable department. N.T. 1/22/93, pp. 118-119.

(30) The $39,963.61 figure represented the amount of 1992 taxes due if petitioner paid after June 30, 1992, but prior to October 31, 1992. Exhibit P-7.

(31) Petitioner issued a check in the amount of $39,963.61 to Tony Rubini, tax collector, on September 29, 1992, which Mr. Rubini deposited on October 13, 1992. N.T. 1/22/93, p. 107 and exhibit P-7.

(32) Upon receiving petitioner's check, Mr. Rubini never suggested to petitioner that those funds be applied to the outstanding 1990 or 1991 taxes despite his having information in his records that the 1990 and 1991 taxes were unpaid. N.T. 1/22/93, pp. 105-6.

(33) Also found in late August or early September of 1992 in petitioner's loan administration department's file was a lien certificate prepared by the Bureau indicating the 1990 and 1991 taxes which were delinquent as of June 19, 1992. N.T. 1/22/93, pp. 69-70 and exhibits P-8 and R-10.

(34) Between August/September of 1992 and October 27, 1992, Ms. Boyd repeatedly attempted, without success, to contact the Bureau at 348-6000 regarding the 1990 and 1991 delinquent tax figures. N.T. 1/22/93, p. 129.

(35) In July of 1992, the Bureau addressed and mailed a notice of tax sale for September 15, 1992 , to "Commerce Bk N.A., 1701 Rt. 70 E, Cherry Hill, NJ 08034." Exhibit B-4.

(36) This notice bore a certified mail number, P9013977. Exhibit B-4.

(37) The Bureau received a return receipt card, bearing this same certified mail number, signed by "J. Bartello," a mail "runner" employed by petitioner, and dated July 28, 1992. N.T. 1/21/93, pp. 16-18; N.T. 2/16/93, pp. 61-62 and exhibit B-3.

(38) Mr. Bartello signed the return receipt card in the box marked "signature-agent." Exhibit B-3.

(39) In addition, the box marked "restricted delivery" on the return receipt card was checked off. Exhibit B-3.

(40) Also accompanying the notice was a mailing slip, form 3883, indicating that several articles were mailed and delivered to petitioner. N.T. 2/16/93, p. 18 and exhibit P-14.

(41) Mr. Bartello's signature appears on this mailing slip in the box marked "addressee." N.T. 2/16/93, p. 72 and exhibit P-14.

(42) Ms. Boyd, however, never received any notices from the Bureau between August, 1992 and October 27, 1992. N.T. 1/22/93, p. 128.

(43) On August 13, 1992, the Bureau advertised the September 15th scheduled sale of the subject property in the *Bucks County Courier Times,* the *Intelligencer/Record* and *Bucks County Law Reporter.* These advertisements included the following information: (1) the purpose of the sale—collecting unpaid taxes, municipal claims, and related costs; (2) the time of the sale— September 15, 1992 at 10:00 a.m.; (3) the place of the sale—Bucks County Courthouse, Doylestown, PA (4) the terms of the sale, including the method of payment and those items comprising the upset price; and (5) a description of the property to be sold, including the approximate upset price—"29 010 118, Commerce Bk. N.A. 108,670.96. Lot #13 Newtown Ind Commons 3.2965A."N.T. 1/21/93, p. 31 and decree nisi entered 1/6/93 (confirming the return and sale of subject property), no. 92-8548-13-6 (Biehn, J.).

(44) On August 13, 1992, Deputy Sheriff Thomas Waltman posted a notice of sale on the building in question, specifically on the main doors of the building facing the parking lot. N.T. 1/21/93, p. 168; N.T. 1/22/93, p. 145 and exhibit B-4.

(45) In addition, he unsuccessfully attempted personal service. After determining that the building was vacant, Deputy Sheriff Waltman wrote "place vacant, return" on the back of the return of personal service indicating that he was unable to make personal service, and returned such notice to the file. N.T. 1/21/93, pp. 174-76 and exhibit B-4.

(46) Subsequent to this posting, John F. Reardon, a construction inspector for petitioner, visited the building in question on the following dates: September 2

and 30, 1992; October 2, 10, 15, 16, and 30, 1992; November 13, 1992; and December 10, 1992. During these visits, Mr. Reardon never observed any posting on the doors facing the parking lot. N.T. 1/22/93, pp. 145-46 and exhibit P-11.

(47) Just prior to the scheduled September 15th tax sale, Patricia Bachtle, Director of the Tax Claim Bureau, went through the files listed for sale to determine whether the notices of sale had been signed and returned to the Bureau and whether personal service had been achieved. N.T. 1/21/93, p. 25.

(48) Upon observing that the pink notice, the personal service notice, had been returned to the file in question, Ms. Bachtle pulled the parcel from the September 15th tax sale in order to "[s]end some other notification and try one more time to contact the [owners]." The sale was postponed until November 10, 1992. N.T. 1/21/93, p. 25.

(49) On September 16, 1992, just one day after the first scheduled tax sale date, the Bureau received a telephone request from Jubanyik, Varbalow, Tedesco, Shaw & Schaffer, petitioner's lawyers, for a tax certificate, after which Ms. Bachtle testified, she ordinarily would have expected payment of the taxes due. The Bureau's work sheet contains no notation that either the September 15th scheduled sale date or the November 10th rescheduled sale date was mentioned in such conversation. N.T. 1/21/93, pp. 102-04 and exhibit B-8.

(50) After numerous attempts to contact the Bureau, Ms. Boyd finally reached Mary Ellen Walker at the Tax Claim Bureau on October 27, 1992. N.T. 1/22/93, p. 121.

(51) Ms. Boyd explained to Ms. Walker that she had been aware that the 1991 taxes were outstanding on the property in question, but that she had no idea

of any 1990 outstanding taxes until she saw the Bureau's lien certificate of June 19, 1992. N.T. 1/22/93, p. 122 and exhibit P-8.

(52) Ms. Walker quoted to Ms. Boyd the following amounts owed for delinquent 1990 and 1991 taxes, including accrued interest: 1990 taxes—$37,913.22 and 1991 taxes—$39,649.89. N.T. 1/22/93, p. 123; N.T. 2/16/93, pp. 88-89 and exhibit B-8.

(53) Ms. Walker advised Ms. Boyd that these figures were "good until November 30, 1992." N.T. 1/22/93, p. 123.

(54) Although at the hearing Ms. Walker did not specifically recall advising Ms. Boyd of the November 10th tax sale date, she testified that it was her normal habit to do so and that she had no reason to believe that she did not do so on October 27th. N.T. 2/16/93, pp. 94-95.

(55) Ms. Walker noted Ms. Boyd's phone number, her direct extension, and her department on the Bureau's work sheet. N.T. 2/16/93, pp. 88-89 and exhibit B-8.

(56) Ms. Boyd requested and received the Bureau's address and the particular room number to which payment of the delinquent taxes should be addressed. N.T. 1/22/93, p. 123.

(57) Ms. Boyd also told Ms. Walker that she would "[i]mmediately get a check cut and that [Ms. Walker] would probably be receiving the check within a two- to three-week period. ..." N.T. 1/22/93, p. 140.

(58) That same day, Ms. Boyd prepared an expense check request in the amount of $77,563.11 ($37,913.22 + $39,649.89). N.T. 1/22/93, p. 124 and exhibit P-8.

(59) Despite an available procedure to expedite the check cutting process, Ms. Boyd did not request such a procedure since she believed she had approximately

five weeks, until November 30, 1992, in which to pay the delinquent taxes. N.T. 1/22/93, p. 125.

(60) On October 29, 1992, two days after the conversation between Ms. Walker and Ms. Boyd, the Bureau mailed, by regular mail, a notice of adjourned tax sale date to "Commerce Bank, 1701 Route 70 East, Cherry Hill, New Jersey 08034" informing petitioner that the subject parcel was scheduled for tax sale on November 10, 1992. N.T. 1/21/93, p. 30 and exhibit B-5A.

(61) Although Ms. Walker presumed that Ms. Boyd was responsible for the payment of the taxes on the subject property, she took no action to direct the notice of adjourned tax sale to Ms. Boyd personally. N.T. 2/16/93, pp. 104-105.

(62) Furthermore, the Bureau did not address this notice to Patrick J. Casey c/o Jubanyik, Varbalow, Tedesco, Shaw & Schaffer as indicated in the realty transfer tax statement of value recorded in the Bucks County Recorder of Deeds even though the current addresses for property owners were obtained from the recorder of deeds and the board of assessment. N.T. 1/21/93, p. 30 and exhibit B-5A.

(63) Neither Mr. Gerard nor Ms. Boyd ever received the notice of adjourned tax sale or found such notice in any of petitioner's files. N.T. 1/22/93, p. 4.

(64) A check was cut by petitioner on November 6, 1992, in the amount of $77,563.11 and made out to "Tax Claim Bureau, Bucks County Courthouse, Room 309, Doylestown, PA 18901." N.T. 1/23/93, p. 139 and exhibit P-8.

(65) On November 10, 1992, the subject property was sold at tax sale because of the unpaid 1990 taxes. N.T. 1/21/93, p. 123.

(66) Mr. Gerard learned of the tax sale two days later on November 12, 1992. N.T. 1/21/93, pp. 218-19.

(67) On immediate review, Mr. Gerard found no notice of tax sale in his department's file. Mr. Gerard reviewed the loan origination department's file which also did not contain any notice of tax sale. N.T. 1/21/93, p. 221.

(68) The loan origination's file, however, did contain a title report dated 12/15/91 indicating that the 1989 and 1990 taxes had been returned unpaid to the Bureau and a letter from petitioner's lawyers, Jubanyik, Varbalow, Tedesco, Shaw & Schaffer, dated February 24, 1992, which had been carbon copied to Ms. Kirby (see findings of fact 13 and 14), showing that the 1990 and 1991 taxes were delinquent. N.T. 1/22/93, pp. 51-52 and exhibits R-5, R-6 and R-7.

(69) Although the $77,563.11 check became available to Ms. Boyd on November 13, 1992, it was not mailed to the Bureau. N.T. 1/22/93, pp. 18 and 139.

(70) The upset figure calculated by the Bureau for the tax sale of the property consisted of the amount of delinquent taxes for 1990 and 1991, plus accrued interest thereon and the amount said to be due by the Bureau for 1992 taxes. No credit against said upset price was made for the owner's payment of $39,963.61 in taxes, made in September of 1992 to the Newtown Township tax collector. N.T. 1/21/93, p. 123.

(71) Edward C. McWilliams, Supervisor of Mail Processing for the United States Postal Service, was qualified at the hearing in this matter as an expert with respect to Postal Service procedures. N.T. 2/16/93, p. 8.

(72) According to Mr. McWilliams, certified mail is merely delivered to the address indicated on the parcel; whereas, certified mail, restricted delivery, must be ad-

dressed to a specified individual, "a human being." N.T. 2/16/93, pp. 9 and 24.

(73) The following three elements must be complied with before an article may be sent and delivered by certified mail, restricted delivery: (1) the article must be addressed to "a person;" (2) there must be the proper endorsement; and (3) the proper fees must be stamped on the article. N.T. 2/16/93, p. 44.

(74) At the Cherry Hill branch of the U.S. Post Office, where Mr. McWilliams works, if restricted delivery is requested, but the parcel is not addressed to a named individual, the article will be processed as ordinary, certified mail. N.T. 2/16/93, pp. 40-42.

(75) Even where the mailer checks off the "restricted delivery" box on the return receipt card and the mailer pays the appropriate restricted delivery fees, if the parcel is not addressed to an individual, there is no way delivery may be restricted; the parcel will be handled as ordinary, certified mail. N.T. 2/16/93, pp. 52-53.

(76) Mr. McWilliams opined that had the notice of tax sale, sent by the Bureau in July of 1992, been addressed merely to "Commerce Bank" it would not fit the categorization of restricted delivery and, thus, would have been handled merely as certified mail. N.T. 2/16/93, p. 51.

(77) During the summer of 1992, petitioner's mail was regularly picked up by its employees, known as "runners," from the Cherry Hill branch of the U.S. Post Office who thereafter delivered it to a location in Mount Laurel, New Jersey, where the mail was sorted. N.T. 1/21/93, p. 227.

(78) At that time, the mail was never opened to determine the appropriate place of final distribution, but rather was sorted based upon the return address indicated

on the parcel and the party to whom the parcel was addressed. N.T. 1/21/93, pp. 228-229.

(79) The Cherry Hill branch of the U.S. Post Office recognized petitioner's "runners" as having the authority on behalf of petitioner to sign for regular, certified mail; but they did not have the authority to sign for certified mail, restricted delivery unless an authorized agent form was on file. N.T. 2/16/93, p. 39.

## DISCUSSION

We first address petitioner's contention that the Bureau failed to provide sufficient notice of the November 10th tax sale as required by 72 Pa.C.S. §5860.602(1990). The following elements must be complied with before a tax claim bureau may auction off a parcel at tax sale:

"(a) At least 30 days prior to any scheduled sale the bureau shall give notice thereof, not less than one in two newspapers of general circulation in the county, if so many are published therein, and once in the legal journal, if any, designated by the court for the publication of legal notices. Such notice shall set forth (1) the purposes of such sale, (2) the time of such sale, (3) the place of such sale, (4) the terms of the sale including the approximate upset price, (5) the descriptions of the properties to be sold as stated in the claims entered and the name of the owner. ...

"(e) In addition to such publications, similar notice of the sale shall also be given by the bureau as follows:

"(1) At least 30 days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by the act.

"(2) If return receipt is not received from each owner pursuant to the provisions of clause (1), then, at least 10 days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes. It shall be the duty of the bureau to determine the last post office address known to said collector and county assessment office.

"(3) Each property scheduled for sale shall be posted at least 10 days prior to the sale." 72 P.S. §§5860.602(a) and (e).

These notice provisions are to be strictly construed and must be strictly complied with in order to guard against the deprivation of property without due process of law. *Muhammad Ali v. Montgomery County Tax Claim Bureau,* 124 Pa. Commw. 557, 562, 557 A.2d 35, 37 (1989). "[D]ue process ... requires at a minimum that an owner of land be *actually notified* by government, if reasonably possible, before his land is forfeited by the state." *In re Tax Claim Bureau of Beaver County Tax Sale September 10, 1990,* 143 Pa. Commw. 659, 665, 600 A.2d 650, 653 (1991) [quoting *Tracy v. County of Chester Tax Claim Bureau,* 507 Pa. 288, 297, 489 A.2d 1334, 1339 (1985)]. (emphasis added) The Tax Claim Bureau has the burden of proving that it complied with all statutory notice provisions. *Rossi v. Indiana County Tax Claim Bureau,* 90 Pa. Commw. 255, 494 A.2d 526 (1985).

Having found that the Bureau published the notice of tax sale at least once in two newspapers, the *Bucks County Courier Times* and the *Intelligencer/Record,* and once in the *Bucks County Law Reporter* (see finding of fact 42); that such publications occurred at least 30 days prior to both the September 15th and the November 10th tax sales (see finding of fact 42); and that such published notices set forth the purpose of the sale, the time and date of the sale, the place of the sale, the terms of the sale including the approximate upset price, and a description of the property to be sold with the name of the owner (see finding of fact 42), we find that the Bureau complied with 72 P.S. §5860.602(a).

We do not find, however, that the Bureau notified petitioner by U.S. certified mail, restricted delivery as required by 72 P.S. §5860.602(e)(1). According to section 933.1 of the Domestic Mail Manual ("DMM"), incorporated by reference in 39 C.F.R. §111.1 (1992), restricted delivery service permits a mailer to direct delivery only to the addressee, an individual specified by name, or the addressee's authorized agent. The notice of tax sale mailed in the present case was addressed to "Commerce Bank, N.A." See exhibits B-3 and B-4. Edward McWilliams, an expert in postal service procedure, testified that a notice addressed in such a manner could not have been delivered as certified mail, restricted delivery, because a "nominated human being" had not been expressed in the address. N.T. 2/16/93, p. 24. According to Mr. McWilliams, "[i]f it doesn't have a name, then it's not restricted delivery," regardless of whether the mailer requested that the article be sent restricted delivery and regardless of whether the mailer paid the requisite fees. N.T. 2/16/93, pp. 40, 52. Mr. McWilliams opined that since the notice

was addressed to "Commerce Bank N.A." and not to an individual, the notice would have been handled as ordinary, certified mail rather than as certified mail, restricted delivery. N.T. 2/16/93, p. 40.

The Bureau argues, however, that it addressed the notice properly because the deed and the real estate transfer tax statement of value, recorded in the Bucks County Recorder of Deeds Office, indicated the name of the grantee as follows: "Commerce Bank, N.A., 1701 Route 70 East, Cherry Hill, NJ 08034." According to the Bureau, petitioner never supplied to the Tax Claims Bureau, to the tax collector, or to any other county agency or authority the name of a specific individual or natural person to whom correspondence should have been directed. See Bureau's proposed findings of fact and conclusions of law. We find the fact to be otherwise.

On the real estate transfer tax statement of value, petitioner specifically identified the following correspondent to whom all inquiries were to be directed: Patrick J. Casey, Esquire c/o Jubanyik, Varbalow, Tedesco, Shaw & Schaffer, 105 South 12th Street, Philadelphia, PA 19107. Exhibit P-16. In addition, Colleen Boyd, the loan administration supervisor for petitioner, sent a letter to the Newtown Township tax collector in July of 1992 regarding the subject property, identifying herself as the loan administration supervisor for petitioner, and requesting that the tax collector notify petitioner in the event of any non-payment of taxes and/or other assessments on the property. Exhibit R-3. Despite this information, the Bureau did not direct the notice of tax sale to either individual; instead, it merely addressed the notice to "Commerce Bank, N.A."

The Tax Claim Bureau is required to make reasonable efforts to notify a landowner that his property has been exposed for tax sale. *In re Tax Claim Bureau of Beaver County Tax Sale September 10, 1990, supra* at 664, 600 A.2d at 653 [citing *Tracy v. County of Chester, supra*]. The mechanisms employed by the Bureau to notify an owner of an impending tax sale "must be reasonably calculated to apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Tax Claim Bureau of Lehigh County 1981 Upset Tax Sale Properties,* 96 Pa. Commw. 452, 455-56, 507 A.2d 1294, 1296 (1986), *allocatur denied,* 514 Pa. 640, 523 A.2d 346 (1987). (citations omitted) "When any notification of a pending tax sale ... is either returned without the required receipted personal signature of the addressee or *under other circumstances raising a significant doubt as to the actual receipt of such notification by the named addressee ...,* then, before the tax sale can be conducted or confirmed, the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him." 72 P.S. §5860.607(a). (emphasis added) Such efforts include a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property. 72 P.S. §5860.607(a). See also, *In re Tax Claim Bureau of Beaver County Tax Sale September 10, 1990, supra* at 665-66, 600 A.2d at 654 ("due process requires the tax claim bureau to do more than merely check telephone directories and the records maintained by the offices of the recorder

of deeds and prothonotary and the county assessment office").

Our courts have repeatedly held that where notices are returned unclaimed, tax bureaus have a duty to make reasonable efforts to obtain a proper address for the owner and to notify the owner at such an address. See *e.g. In re Tax Claim Bureau of Beaver County Tax Sale September 10, 1990, supra* (court held bureau did not make reasonable effort to determine owner's proper address where original notice returned undelivered, bureau had in its files two petitions with owner's correct address, and bureau also had name and address of owner's attorney); *Rossi v. Indiana County Tax Claim Bureau, supra* (court held that ordinary, common sense business practices should have led bureau to note Pittsburgh address on deed and, thus, to have sent at least the second notice to such an address). Although the notice of tax sale sent in the present matter was as not returned unclaimed, we find that the circumstances surrounding the mailing of such notice indicated that the Bureau was aware that petitioner may not have received such notice. Just prior to the scheduled September 15th tax sale, Patricia Bachtle, Director of the Bureau, made the decision to pull the subject parcel from the sale in order to "[s]end some other notification and try one more time to contact the [owners]." N.T. 1/21/93, p. 25. Ms. Bachtle then postponed the sale until November 10, 1992. This behavior indicates an awareness on the Bureau's part that petitioner may not have received notice of the sale. As such, the Bureau was under a duty to exercise reasonable efforts to contact petitioner. Since a corporation can act only through its agents, the Bureau is under a duty to make reasonable attempts to identify such agents and to contact them di-

rectly. See *Financial Management Professional Corporation v. Tax Claim Bureau of Monroe County,* 121 Pa. Commw. 205, 550 A.2d 601 (1988) (court held notice improper because notice had been mailed in care of an individual who was neither an employee nor an agent of the corporation; the court commented that the bureau could have phoned the corporation and inquired as to the name of their registered agent). This is not a case where the Bureau, through reasonable efforts, could not have obtained that information. Had the Bureau merely reviewed the Recorder of Deeds' file and/or phoned the tax collector's office, it would have discovered that petitioner had identified Mr. Casey as its authorized agent/correspondent and that Ms. Boyd, an employee of petitioner's, had been in contact with the tax collector's office regarding the taxes due on the subject property. It then could have insured that petitioner received notice by directing the notice of tax sale to either one or both individuals. Cf. *Golden Eagle Adventures, Inc. v. Chester County Tax Claim Bureau,* 38 Chester Co. L. Rep. 53 (1990) (court held notice sufficient even though notice addressed to corporation because it was sent to corporation's attorney, its designated agent). In failing to do so, the Bureau failed to comply with the statutory notice requirements.

We also do not find that the letter regarding the adjourned tax sale date of November 10, 1992, sent by the Bureau by regular mail on October 29, 1992, cured the prior defective notice. While a properly addressed, subsequent notice of tax sale may cure a prior defective notice, such is not the case here since the "second notice" did not comply with the statutory requirements either. See *In re Upset Price Tax Sale of September 9, 1985,*

127 Pa. Commw. 400, 407, 561 A.2d 1301, 1305 (1989) ("[a] properly addressed notice of a tax sale sent pursuant to and in compliance with the provisions of section 602(e)(2) of the law has the effect of curing any defect in a notice sent pursuant to section 602(e)(1) ..."). Just two days prior to the Bureau's mailing this second notice, Ms. Boyd phoned Mary Ellen Walker at the Bureau, obtained the figures for the taxes due, and informed Ms. Walker that she should expect a check for the taxes due within a two- to three-week period. N.T. 1/22/93, p. 140. On the Bureau's work sheet, Ms. Walker specifically noted Ms. Boyd's phone number, her direct extension, and that she worked in "loan management." N.T. 2/16/93, pp. 88-89 and exhibit B-8. Despite this information Ms. Walker made no effort to direct the notification letter to Ms. Boyd's attention. Moreover, she did not send the letter by certified mail, return receipt requested, as required by the statute. Having not done so, the Bureau failed again to notify petitioner in compliance with 72 P.S. §5860.602(e)(1).

We found no evidence in the record that, despite the improper mailing, petitioner had actual knowledge of the sale. See *Hicks v. Och,* 17 Pa. Commw. 190, 193, 331 A.2d 219, 220 (1975) ("Actual receipt of an improperly addressed registered mail notice may cure the defective mailing"); *In re Tax Claim Bureau of Lehigh County 1981 Upset Tax Sale Properties, supra* (court noted that to require strict compliance where owner had actual notice is to "exalt form over substance"). We, therefore, find that petitioner's due process rights were violated since the Bureau failed to comply with the requirements of the notice statute, 72 P.S. §5860.602. As such, we hold that the tax sale was invalid.

In light of this ruling, we find no need to address petitioner's or respondents' other arguments, including petitioner's claim of estoppel.

## CONCLUSIONS OF LAW

(1) The Bureau must comply strictly with the notice provisions contained in 72 P.S. §5860.602.

(2) Section 5860.602(a) requires that the Bureau publish notice of the tax sale at least 30 days prior to the scheduled sale in two newspapers of general circulation in the county and once in the legal journal, designated by the court for the publication of legal notices. Such notice must set forth (1) the purpose of the sale, (2) the time of the sale, (3) the place of the sale, (4) the terms of the sale, including the approximate upset price, and (5) a description of the property to be sold as stated in the claims entered and the name of the owner.

(3) Having published adequate notice in two local newspapers, the *Bucks County Courier Times* and the *Intelligencer/Record,* and in the *Bucks County Law Reporter,* the Bureau properly complied with 72 P.S. §5860.602(a).

(4) The Bureau failed, however, to mail notice of the sale by United States certified mail, restricted delivery, return receipt requested, postage prepaid as required by 72 P.S. §5860.602(e)(1).

(5) Having failed to properly notify petitioner of the impending tax sale, petitioner was denied due process.

(6) The tax sale, therefore, was invalid.

## ORDER

And now, July 15, 1993, it is hereby ordered and decreed that petitioner's objections and exceptions to the tax sale of parcel no. 29-10-118 on November 10, 1992, are sustained and said sale is void.