**In re TAX CLAIM BUREAU OF SCHUYLKILL COUNTY SALE OF SEPTEMBER 29, 2000.**

**Appeal of Joseph F. SPOTTS, Jr. and Ann Spotts.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 8, 2002.

Decided May 22, 2002.

---

Stephen P. Ellwood, Pottsville, for appellants.

Stacey A. Foust, Pottsville, for appellee.

BEFORE: COLINS, President Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Joseph F. Spotts, Jr. and Ann Spotts (Objectors) appeal from the July 20, 2001 order of the Court of Common Pleas of Schuylkill County which overrules Objectors' objections to the tax sale of September 29, 2000, as to tax parcels No. 41–7–146 and Nos. 41–7–146(3) and confirms the sales thereof. We affirm.

On September 29, 2000, the Schuylkill County Tax Claim Bureau (Bureau) offered for sale fractional interests of certain property, including tax parcels No. 41–7–146 and No. 41–7–146(3), as a result of non-payment of taxes for tax years 1994–1998. The amount of delinquent taxes was based upon the assessed records of the Bureau as to those specific parcels.

Objectors had purchased a fractional interest in parcel No. 41–7–146 in 1984 at a tax sale. Initially, Objectors' fractional interest was reflected as tax parcel No. 41–7–146(3) but was later changed and identified by the Bureau as tax parcel No. 41–7–146(4). Objectors did not identify the exact extent of their fractional interest but the taxing bills indicate an interest in 4.2 acres on the south side of Ash Street in Cressona, Schuylkill County, Pennsylvania. Objectors have never been delinquent in the payment of taxes due on their fractional interest in the property.

Prior to the September 29, 2000 sale, the Bureau had offered other fractional interests of the subject property designated as parcel No. 41–7–146 for sale on September 26, 1997. Objectors lodged objections on the basis that they owned a fractional interest in the property and were not provided notice under the Real Estate Tax Sale Law (Law).[1] This proceeding was docketed at case number S–2132–1997. In that proceeding, the trial court found that no certified mail notice of the sale was provided to Objectors because the Bureau did not believe that Objectors were the owners of the interests scheduled for sale. The trial court concluded, based on precedent, that all owners of fractional interests in a parcel qualify as "owners" of the property for tax sale notice purposes and must be given statutory notice of a sale of any interest in the property. The trial court concluded further that a fractional owner who receives notice of the sale of his interest may object to the failure of the tax claim bureau to notify other fractional owners of the sale of his interest even if those other owners have posed no objection to the sale. Thus, the trial court held that Objectors should have received notice of the tax sale of any interest in parcel No. 41–7–146 and in an order dated July 28, 2000, the trial court negated portions of the sale with directions to the Bureau to proceed in conformity with the Law, if applicable.

In the instant matter, the trial court took judicial notice of the findings and conclusions in the proceedings docketed at S–2132–1997. In that prior proceeding, the trial court found that research by the Bureau indicated that the land in question was included within property transferred by deed dated September 3, 1847 from

---

1. Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§ 5860.101—5860.803.

Thomas Sillyman to John Cressen. A title search on behalf of the Bureau revealed that in 1874 John Cressen transferred 204 acres and 106 perches of land by various fractional interests to nine individuals by recorded deed. A 22/75th interest in the acreage was transferred by John Cressen to Rufus Wilder in the 1874 deed and is believed by the Bureau to be the interest in the land that is the subject of this action. Rufus Wilder subsequently transferred his interest to Daniel Dechert.

The trial court also found that the Bureau was aware at the time of the 1997 sale of the property at issue, that there must have been other partial interests existing in the parcels in question, beyond that of Daniel Dechert, but was not aware of the identity of the owners of all of the interests. In addition, as a result of the trial court's holding that Objectors should have received notice of the 1997 tax sale of any interest in parcel No. 41–7–146 as should have, at a minimum, all of Daniel Dechert's heirs, the trial court determined that the issue of whether notification was required to be given to the unknown owners of all of the partial interests in parcel No. 41–7–146, which the Bureau had not ascertained by title search, or otherwise, need not be reached.

With respect to the current matter, Objectors appeared at the September 29, 2000 tax sale but did not buy the property. The relevant parcels were sold to the highest bidder, Robert C. and Catherine L. Woleschok.

On November 27, 2000, Objectors filed objections to the September 29, 2000 tax sale by the Bureau of the properties designated as tax parcels No. 41–7–146 and No. 41–7–146(3). At the time of the tax sale, Objectors asserted that they owned an un-specified fractional interest in the subject properties and that the tax sale of September 29, 2000 failed to comply with the Law. Objectors alleged that the sale was invalid because the Bureau refused to accept payments offered by Objectors, that the description of the property was inadequate, that the upset prices were not properly established, and finally that proper notice was not given by the Bureau.

After a hearing, the trial court determined that although Objectors asserted several grounds for relief, the only issue raised and supported at the hearing was whether or not proper notice was given of the tax sale.[2] The trial court found that notice of the sale was properly given pursuant to Section 602 of the Law by publication, by posting, and by certified mail to all known owners, or their designees, having an interest in the property identified by the Bureau.

The trial court found that the property was properly posted for sale by posting notice of the sale on the real estate. The trial court also found that the tax parcels and property were advertised with the notice of sale being published in the Pottsville Republican & Evening Herald on August 24, 2000 and in the Schuylkill Legal Record on August 24, 2000. The trial court found that certified and first class mail notice of the sale was given to all known owners or their designees, including Objectors by the Bureau. The trial court found that first class mail notice was forwarded to all identified known owners or their designees who failed to receive certified mail notice by the Bureau on September 5, 2000, being at least ten days prior to the sale date.

---

2. Objectors declined the opportunity to prove that any of the Bureau's assumptions were incorrect.

■ Accordingly, the trial court entered an order overruling the objections to the tax sale of the fractional interests in the property for non-payment of taxes and confirmed the sales of the tax parcels designated as No. 41–7–146 and No. 41–7–146(3). This appeal by Objectors followed.[3]

Section 602(a) of the Law requires, in pertinent part, that the taxing bureau publish notice at least thirty days prior to any scheduled sale. 72 P.S. § 5860.602(a). In addition to such publication, similar notice of the sale shall also be given by the taxing bureau at least thirty days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid to each owner as defined by the Law. Section 602(e)(1) of the Law, 72 P.S. § 5860.602(e)(1). If return receipt is not received from each owner pursuant to Section 602(e)(1) of the Law, then at least ten days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the taxing bureau. Section 602(e)(2) of the Law, 72 P.S. § 5860.602(e)(2).

Pursuant to Section 607.1 of the Law,[4] when notification of a pending tax sale is required to be mailed to any owner and such mailed notification is either returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt of such notification by the named addressee or is not returned or acknowledged at all, then before the tax

sale can be conducted or confirmed, the taxing bureau must exercise reasonable efforts to discover the whereabouts of the owner and notify him.

■ It is well settled that the notice provisions of the Law are to be strictly construed and that strict compliance with the notice provisions is essential to prevent the deprivation of property without due process. *Murphy v. Monroe County Tax Claim Bureau,* 784 A.2d 878 (Pa.Cmwlth. 2001). The purpose of a tax sale is not to strip an owner of his property but rather to insure that the tax on the property is collected. *Id.* At a minimum, due process requires that if reasonably possible, a government must notify an owner before his property is sold at an upset tax sale. *Id.*

■ The requirement of due process was explained by this Court in *Farro v. Tax Claim Bureau of Monroe County,* 704 A.2d 1137, 1142 (Pa.Cmwlth.1997), *petition for allowance of appeal denied,* 555 Pa. 722, 724 A.2d 936 (1998), as requiring the taxing bureau to conduct a reasonable investigation to ascertain the identity and whereabouts of the latest owners of record of property subject to an upset sale for the purposes of providing notice to that party. A taxing bureau's duty to investigate such matters is confined to determining the owners of record and then to use ordinary common sense business practices to ascertain proper addresses where notice of the tax sale may be given. *Farro,* 704 A.2d at 1142. Where notice is obviously not effectively reaching the owners of record, the taxing bureau must go beyond the mere ceremonial act of notice by certified mail. *Id.* at 1143. However, due process does

---

**3.** This Court's review in tax sale cases is limited to determining whether the trial court abused its discretion, rendered a decision with a lack of supporting evidence, or clearly erred as a matter of law. *Halpern v. Monroe County Tax Claim Bureau,* 126 Pa.Cmwlth. 35, 558 A.2d 197(1989).

**4.** *Added by* the Act of July 3, 1986, P.L. 35, 72 P.S. § 5860.607a.

not require the taxing bureau to perform the equivalent of a title search or to make decisions to quiet title. *Id.*

■ Herein, Objectors first argue that the Bureau did not give proper notice under the Law because the Bureau was aware that there were interests in the property that could not be determined and for which owners could not be determined. Objectors contend that despite this knowledge, the Bureau went forward with the sale of partial interests of the property in question.

Ms. Susan Koch testified on behalf of the Bureau that the Bureau had previously conducted a title search of the subject property and that the search went back as far as September 1847. Reproduced Record (R.R.) at 17a. Ms. Koch testified that 22/75th interest in the property was conveyed in 1879 to Daniel Dechert. *Id.* at 19a. Ms. Koch testified that, thereafter, there was an orphan's court decision dated 1988 for the estate of Daniel Dechert wherein the court divided the interest in the subject property to family members. *Id.* Ms. Koch testified that in order to determine to whom to give notice of the September 29, 2000 tax sale, the Bureau relied on the 1988 orphans' court decision. *Id.* at 21a. Ms. Koch testified further that two percent (2%) of the subject property was not disposed of by the 1988 orphans' court order and that the Bureau, after working on ascertaining who owns that 2%, has not been able to ascertain the owner or owners of that interest. *Id.* at 22a. Ms. Koch stated that it would be impossible to clean up the title to the property. *Id.* at 53a.

As stated previously herein, a taxing bureau is required to conduct a reasonable investigation to ascertain the identity and whereabouts of the latest owners of record of property subject to an upset sale for the purposes of providing notice to that party.

*Farro.* Herein, our review of Ms. Koch's testimony reveals that the Bureau did conduct a reasonable investigation when it conducted a title search and relied upon an orphans' court decision to ascertain the identity of the owners of the 2% of parcel No. 41–7–146. The Bureau's investigation actually went beyond what is required, as the Bureau was not required to conduct a title search or undertake efforts to quiet the title.

■ Next, Objectors contend that the Bureau was also aware that two of the owners listed in the orphans' court 1998 decision had died but instead of ascertaining whether the deceased had other heirs other than a spouse, the Bureau merely sent notice to the deceased owners' spouses. Objectors argue that the Bureau erred by relying only upon the orphans' court order and the names of the spouses. Objectors argue that the Bureau should have determined if the deceased owners had left a will giving the interest to someone other than the spouse. Finally, Objectors argue that the Bureau sent notice to addresses of heirs "in care of" other known heirs without determining if the heirs they wanted to notify had any relationship to the heirs whose addresses were used. Again, we disagree.

With respect to the deceased owners, Cornelia C. Ferguson and William B. Dechert, Ms. Koch testified that the Bureau sent notice to Cornelia C. Ferguson's husband, who was still living, and that Thomas Ferguson signed receipt of the notice. R.R. at 26a; 34a. Ms. Koch testified that the Bureau sent notice to William B. Dechert's wife, who was still living, and that Mitzi Dechert signed receipt of the notice. *Id.* Ms. Koch testified further that the Bureau assumed that the spouses of the deceased owners were the heirs of the interests in the subject property because Cornelia C. Ferguson and William B. Dec-

hert lived in other states and the information about who actually inherited their interests was not readily available to the Bureau. *Id.* at 27a.

Based on Ms. Koch's testimony, we conclude that the Bureau reasonably assumed that the spouses of the deceased owners were those owners' heirs. As Ms. Koch testified, the deceased owners' resided in other states. Because the notice was signed for and received by the deceased owners' spouses residing in other states, the Bureau had no duty to research in those other states to determine if the spouses were the true heirs of the ownership interest.

■ With regard to Objectors' argument that the Bureau sent notice to addresses of heirs "in care of" other known heirs without determining if the heirs they wanted to notify had any relationship to the heirs who addresses were used, the record shows that the Bureau, in order to comply with the trial court's July 28, 2000 order, sent notices to every record owner who had a partial interest in the property. R.R. at 43a. Ms. Koch testified that the Bureau, for parcel No. 41–7–146, determined that Graham Hahn and the late Joan Hahn were the last owners of record. *Id.* at 40a. Ms. Koch testified that, due to the limitations of the Bureau's computer system, this resulted in all partial owners in that parcel receiving notice in the form "in care of" for the last record owner regardless of whether the owners were related. *Id.* at 43a–44a. For example, Ms. Koch testified that notice was sent to Joan Hahn "in care of" all the other partial owners whether they were related or not. *Id.* at 44a–45a.

Despite this manner of notice, the record clearly shows that all the owners or their designees properly received notice of the September 29, 2000 tax sale in accordance with the Law. Accordingly, we re-

ject Objectors' contentions that the Bureau did not use proper efforts in giving notice and that the Bureau sent the notices in such a manner that the Bureau knew the notices would not actually reach the true owners.

Lastly, Objectors contend that there is a question as to what property Objectors own and what property was sold because their property is identified in their deed as parcel No. 41–7–146(3) and the assessment office sent tax bills identifying the property as parcel No. 41–7–146(4). Objectors contend that the best evidence of the identity of their property is the deed and based upon this, the Bureau sold Objectors' property even though the Bureau admits that Objectors' share of the taxes was not delinquent. Objectors' argue that this fact alone mandates reversal of the trial court's order.

We reject this argument as there is no evidence in the record to support Objectors' contention. Objectors contend that the best evidence of the identity of their property is the deed; however, the deed is not part of the certified record in this case. Moreover, Ms. Koch testified that, although at the time of the sale to Objectors, their partial interest was shown as parcel No. 41–7–146(3), the Bureau's records have shown Objectors as owning parcel No. 41–7–146(4) for the last 16 or 17 years. R.R. at 38a. Ms. Koch testified further that the taxes paid by Objectors with respect to their partial interest were applied to parcel No. 41–7–146(4). *Id.* at 40a. In addition, Ms. Koch testified that the exact partial interests that were sold at the upset sale of September 29, 2000 were those parcels designated as No. 41–7–146 and No. 41–7–146(3). *Id.* at 39a.

Accordingly, the trial court's order is affirmed.

President Judge COLINS dissents.

## ORDER

AND NOW, this *22nd* day of *May*, 2002, the order of the Court of Common Pleas of Schuylkill County in the above captioned matter is affirmed.