IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Tax Claim Bureau's Sales of     :
Real Estate for Unpaid Taxes Levied     :
for the Year 2018     :
    :
Daniel R. Clark and Victoria Clark     :     No. 598 C.D. 2021
Bolger trading as Split Rock Family     :     Argued: December 12, 2022
Partnership,     :
                Appellants     :
         v.     :
    :
County of Carbon, Tax Claim Bureau     :

BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                FILED: February 22, 2023

Daniel R. Clark (Clark) and Victoria Clark Bolger (Bolger) trading as Split Rock Family Partnership (Split Rock) appeal from the Carbon County Court of Common Pleas' (trial court) May 17, 2021 order (Order) overruling their objections and exceptions to upset tax sale (Objections and Exceptions) and refusing to set aside the tax sale of property located at 18 Birchwood Drive, Lake Harmony, Pennsylvania (Property). For the following reasons, we reverse.

## I. BACKGROUND

On September 15, 2020, the Carbon County Tax Claim Bureau (Bureau) held an upset tax sale for the Property as a result of delinquent property taxes (tax sale).

Trial Ct. Op. at 1-2. At the time of the tax sale, the record title owner of the Property was Split Rock. *Id*. at 2. Christian Fehrenbacher (Purchaser) was the successful bidder at the tax sale and purchased the Property for $45,000.00. *Id*.

On November 9, 2020, Clark and Bolger trading as Split Rock filed their Objections and Exceptions, asserting the Bureau failed to comply with the Real Estate Tax Sale Law's (Tax Law)[1] notice requirements. *Id*. Purchaser filed a motion to intervene in the objection proceedings, which the trial court granted. *Id*. Additionally, Purchaser and the Bureau both filed Answers to Clark and Bolger's Objections and Exceptions and raised challenges to the existence and validity of Split Rock as a partnership. *Id*. at 3. In January 2021, the trial court held a hearing on the Objections and Exceptions. *Id*. at 2.

At the hearing, Clark and Bolger testified on behalf of Split Rock. *Id*. Bolger testified she and Clark were the only general partners of Split Rock, but the trial court noted that neither Bolger nor Clark produced any documentation supporting the existence or creation of the partnership. *Id*. at 3. Bolger testified she was not aware of whether any fictitious name registration was ever filed or whether any income tax filings were ever submitted for Split Rock. *Id*. Similarly, Clark testified he did not know if Split Rock was registered or whether taxes were paid by Split Rock. *Id*.

Bolger testified she previously resided at 18 Miles Road, Darien, Connecticut (Connecticut Address) and claimed not to know Split Rock's real estate tax bills were being sent there. *Id*. at 4. However, as the trial court noted, she also testified that if those tax bills were sent to that address while she lived there, she would have made sure they were paid or sent to her father for payment. *Id*. Bolger testified she

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101-5860.803.

moved from the Connecticut Address to New Jersey in June 2017, and claimed she completed a change of address form with the United States Postal Service (U.S. Postal Service), but she did not indicate whether she changed the certified address for the Property with anyone, including the tax collector or tax assessment office. *Id.* at 5. Bolger was also unaware of whether a forwarding address was ever provided for the Property. *Id.*

The Bureau Director testified that the Bureau sent all notices regarding the tax sale to the address on file for Split Rock, which was the Connecticut Address. *Id.* at 6. On April 1, 2019, the Bureau sent a Notice of Return and Claim (First Notice of Return and Claim) for unpaid 2018 real estate taxes to Split Rock at the Connecticut Address by certified mail. *Id.* at 6. The U.S. Postal Service returned the First Notice of Return and Claim with the notation "wrong address" and a postal sticker noting "return to sender, not deliverable as addressed, unable to forward." *Id.* at 7.

After receiving the First Notice of Return and Claim back, the Bureau Director researched files in the Bureau, the tax assessment office, and with the recorder of deeds in an attempt to locate another address for Split Rock but was unsuccessful. *Id.* On July 11, 2019, the Bureau had a Notice of Return and Claim (First Posted Notice) for the unpaid 2018 real estate taxes posted to the Property. *Id.* at 7. On May 1, 2020, the Bureau sent a Notice of Return and Claim (Second Notice of Return and Claim) to Split Rock at the Connecticut Address for unpaid 2019 real estate taxes. *Id.* at 8. The Second Notice of Return and Claim was not returned to the Bureau and was received at the Connecticut Address on May 22, 2020. *Id.* The signature on the U.S. Postal Service return receipt appears to read "Split" with additional writing underneath. *See* Reproduced Record (R.R) at 41a.

On June 3, 2020, the Bureau sent a Notice of Public Tax Sale (First Notice of Public Sale) to Split Rock at the Connecticut Address advising that unless it paid $1,481.43, the Property would be sold at a public sale on September 15, 2020. *Id.* at 8. This notice was received at the Connecticut Address on June 12, 2020. *Id.* The signature on the U.S. Postal Service return receipt was illegible. *Id.* at 44a. On July 8, 2020, the Bureau had a Notice of Public Sale posted on the Property. *Id.* at 9.

On August 17, 2020, the Bureau sent another Notice of Public Tax Sale (Second Notice of Public Sale) to Split Rock at the Connecticut Address. *Id.* at 9. The U.S. Postal Service returned this mailing to the Bureau on August 26, 2020, with a label affixed to it indicating "return to sender, not deliverable as addressed, unable to forward." *Id.* at 10.

The Bureau held the Tax Sale on September 15, 2020, and afterwards, made a consolidated return to the trial court. *Id.* at 10. Clark and Bolger both testified they did not see any of the notices or sign for any certified mail. *Id.* at 6. Additionally, Bolger testified she never authorized anyone at the Connecticut Address to sign for any notices after she moved to New Jersey. *Id.* Further, Bolger testified she never received the consolidated return and Clark testified he only knew the Property was sold because a handyman notified him the locks to the house were changed. *Id.* at 10.

On May 17, 2021, the trial court issued its order overruling and dismissing Clark and Bolger's Objections and Exceptions. First, the trial court concluded Clark and Bolger, trading as Split Rock, lacked standing to raise objections to the loss of the Property because Split Rock was the title owner of the Property and Split Rock is a "fictitious name devoid of any proper names to identify its partners." Trial Ct. Op. at 15. As such, the trial court concluded that because Split Rock is an

4

unregistered general partnership and an unregistered fictitious name, Split Rock lacked standing to file the Objections and Exceptions.

Notwithstanding the trial court's conclusion that Split Rock lacked standing, the trial court went on to address the merits of the case. The trial court concluded the Bureau's notices were adequate and complied with the Tax Law's notice requirements. Additionally, the trial court considered the Bureau Director's testimony that after the U.S. Postal Service returned the First Notice of Return and Claim, she researched files in the Bureau, the tax assessment office, and with the recorder of deeds to attempt to locate another address for Split Rock. *Id*. at 26. The trial court indicated that because two of the notices were accepted and signed for at the Connecticut Address, the Bureau did not need to take additional notification efforts. *Id*. at 27. The trial court concluded the Bureau met its burden regarding the Tax Law's notice requirements before the sale of the Property and, as such, overruled and dismissed Clark and Bolger's Objections and Exceptions.

### Issues on Appeal[2]

Clark and Bolger raise several issues on appeal. First, Clark and Bolger assert the trial court erred in finding that they lacked standing because Split Rock was not required to register under the Fictitious Names Act,[3] the Fictious Names Act does not apply to petitions to set aside a tax sale, and the Bureau and Purchaser waived the issue of standing. Second, they assert the trial court committed reversible error when it found the Bureau strictly complied with the Tax Law. Third, they assert the trial court erred when it ruled that the Bureau was excused from complying with the

---

[2] Clark and Bolger raise 10 issues in their Statement of Questions Involved. For ease of disposition, we have consolidated and reframed the issues.

[3] 54 Pa. C.S. §§ 301-332.

5

additional notice requirements of the Tax Law. Fourth, they contend the trial court erred in refusing to set aside the sale because the Bureau failed to memorialize its efforts to locate Clark and Bolger. Finally, they assert the trial court erred in finding that the Bureau properly posted the property.

In response, Purchaser argues the trial court exercised proper discretion in determining the Bureau and Purchaser adequately raised the issue of standing. Additionally, he contends the trial court properly determined that Clark and Bolger lacked standing to challenge the tax sale as a partnership operating as an unregistered fictitious name. Next, Purchaser asserts evidence adequately supported the trial court's determination that the Bureau complied with the notice requirements of the Tax Law and that in light of the information known at the time to the Bureau, the Bureau made a reasonable effort to determine the owner of record and ascertain a proper address for Split Rock. Finally, Purchaser asserts evidence adequately supported the trial court's determination that the Bureau complied with the Tax Law's posting requirements.[4]

## II. DISCUSSION

Our standard of review in tax sale cases is limited to determining whether the trial court abused its discretion, erred as a matter of law, or rendered a decision without supporting evidence. *Rice v. Compro Distrib., Inc.*, 901 A.2d 570, 574 (Pa. Cmwlth. 2006). An abuse of discretion exists where a trial court "has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1123-24 (Pa. 2000). Further, a trial court abuses its discretion where its findings are not supported by substantial evidence of record.

---

[4] The Bureau adopted Purchaser's brief. *See* Appellee Carbon County Tax Claim Bureau's Adoption of Brief of Intervenor, Christian Fehrenbacher, dated July 13, 2022.

*I.B.P.O.E. of W. Mount Vernon Lodge 151 v. Pa. Liquor Control Bd.*, 969 A.2d 642, 649 (Pa. Cmwlth. 2009). An error of law is a misinterpretation or misapplication of the law. *Harman ex rel. Harman*, 756 A.2d at 1123; *City of Phila. v. Fraternal Order of Police, Lodge No. 5*, 558 A.2d 163, 164 (Pa. Cmwlth. 1989).

## Standing

We begin by addressing the issue of standing. The trial court overruled and dismissed Split Rock's Objections and Exceptions holding the Objections and Exceptions were an action brought at a time when Clark and Bolger, who were trading under the fictitious name Split Rock, had not yet registered that name under the Fictitious Names Act and, therefore, Split Rock lacked standing to bring the action in court. Trial Ct. Op. at 16-17. Clark and Bolger assert that the trial court erred in its determination that Clark, Bolger, and Split Rock lacked standing. Specifically, Clark and Bolger assert (1) they were not required to register Split Rock under the Fictitious Names Act, (2) the Fictitious Names Act does not apply to petitions to set aside a tax sale, and (3) the Bureau and Purchaser waived the issue of standing. In response, Purchaser argues the trial court properly deemed Clark and Bolger's Objections and Exceptions an "action" as set forth in the statute because the matter was given a specific civil docket number and was set forth as a petition with a request for relief. Purchaser's Br. at 20. Additionally, Purchaser asserts the trial court properly determined that based upon the failure of Clark and Bolger to register Split Rock as a fictitious name, in violation of 54 Pa. C.S. § 331(a), they lacked standing to challenge the tax sale on behalf of Split Rock. Purchaser's Br. at 19.

The doctrine of standing is a judicially created principle designed to weed out litigants who have no direct interest in a matter. *Off. of the Governor v. Donahue*,

7

98 A.3d 1223, 1229 (Pa. 2014). The "core concept of the doctrine of standing is that a person who is not adversely affected in any way by the matter he seeks to challenge . . . has no right to obtain a judicial resolution of his challenge." *In re T.J.*, 739 A.2d 478, 481 (Pa. 1999). In Pennsylvania, standing is not a jurisdictional issue because an issue related to standing is waivable. *In Re Est. of Brown*, 30 A.3d 1200, 1204 (Pa. Super. 2011).

First, we consider whether the trial court erred in its determination that Clark and Bolger were required to register Split Rock under the Fictitious Names Act. Clark and Bolger assert Split Rock was not required to register itself with the Commonwealth because it is a general partnership and, under 15 Pa. C.S. §§ 8422(a) and 8621,[5] only a limited partnership is required to register. However, Clark and Bolger's reliance on these sections is misplaced. The issue is not whether Clark and Bolger were required to register in order to form a general partnership. Rather, the issue is whether they were required to register the general partnership's name, Split Rock, under the Fictious Names Act in order for Split Rock to maintain an action in court.

Under Pennsylvania's Fictitious Names Act, "[n]o entity which has failed to register a fictitious name by this chapter shall be permitted to maintain any action in any tribunal of this Commonwealth until such entity shall have complied with the provisions" of the Fictitious Names Act. 54 Pa. C.S. § 331(a). A "fictious name" under the Act is "[a]ny assumed or fictitious name, style or designation other than the proper name of the entity using such name. The term includes a name assumed

---

[5] According to 15 Pa. C.S. § 8422, "[e]xcept as provided in subsection (b), the association of two or more persons to carry on as co-owners [of] a business for profit forms a partnership, whether or not the persons intend to form a partnership." Under 15 Pa. C.S. § 8621, in order "[t]o form a limited partnership, a person must deliver a certificate of limited partnership to the department for filing."

by a general partnership, syndicate, joint adventureship or similar combination or group of persons." *Id*. at § 302. The purpose of the Fictitious Names Act is to protect people who give credit in reliance on the fictitious name and to establish the identities of those owning a business. *Lamb v. Condon*, 120 A. 546 (Pa. 1923).

Here, Clark and Bolger assumed the fictitious name of Split Rock for their general partnership. Split Rock is neither Clark nor Bolger's proper name and is, therefore, a fictious name. The statute is clear that before an entity which has failed to register a fictitious name is permitted to "maintain any action in any tribunal of this Commonwealth," the entity must register its name under the Act. However, in *Battisti v. Tax Claim Bureau of Beaver County*, 76 A.3d 111, 115 (Pa. Cmwlth. 2013), this Court concluded that objections and a petition to set aside tax sale do not constitute a civil action or pleading under the Pennsylvania Rules of Civil Procedure. Therefore, Clark and Bolger's Objections and Exceptions does not constitute an action and the Fictitious Names Act does not apply and does not bar Clark and Bolger, trading as Split Rock, from having standing. Therefore, the trial court erred in its determination that Clark, Bolger, and Split Rock lacked standing due to their failure to register Split Rock under the Fictitious Names Act. Clark and Bolger, with ownership interest in the Property, have a direct interest in this matter and, as such, had standing to file the Objections and Exceptions.[6]

## Notice

Next, we consider whether the trial court erred in its determination that the Bureau complied with the notice requirements of the Tax Law. Clark and Bolger argue the Bureau failed to strictly comply with the Tax Law. Specifically, Clark and

___

[6] Because we conclude Clark and Bolger, as having an ownership interest in the Property, had standing to file the Objections and Exceptions, we need not address Split Rock's assertion that the Bureau and Purchaser waived the issue of standing.

9

Bolger assert the Tax Law requires that when mail is returned as undeliverable or returned under circumstances raising doubt that the taxpayer received the notice, the Tax Law requires an authority to take additional reasonable efforts to locate the taxpayer. Additionally, Clark and Bolger assert the Bureau failed to properly memorialize its efforts to locate the taxpayers as required by the Tax Law. Finally, Clark and Bolger assert the Bureau failed to properly post the property as required by the Tax Law.

In response, Purchaser argues the Bureau satisfied the Tax Law's notice requirements. Purchaser asserts the evidence the Bureau presented clearly demonstrates that required notices were properly mailed to Split Rock at the only known address for Split Rock. Additionally, despite the First Notice of Return and Claim having been returned to the Bureau, the Bureau received a signed return receipt that a later notice had been accepted at the Connecticut Address on behalf of Split Rock. Regarding the efforts taken by the Bureau to locate Split Rock, Purchaser asserts reasonableness should be determined based upon the information available to the Bureau at the time. Purchaser points out that the Tax Law does not require the Bureau to notify anyone not of record with an interest in the property, and therefore, the Bureau's duty to search for correct names and addresses of owners is limited to owners of record as defined by the Tax Law.

In considering the parties' arguments regarding the Bureau's compliance with the Tax Law, we are mindful that the purpose of the Tax Law is to ensure the collection of taxes, not to deprive citizens of their property. *In re Sale of Real Est. by Lackawanna Cnty. Tax Claim Bureau*, 255 A.3d 619, 627-28 (Pa. Cmwlth. 2021). Due process concerns are implicated in tax sale cases because "[i]t is a fundamental provision of both our state and federal constitutions that no person shall be deprived

of property except by the law of the land or due process of law[.]" *Id.* (*quoting Hess v. Westerwick*, 76 A.2d 745, 748 (Pa. 1950)). Due process requires, at a minimum, that a tax claim bureau notify an owner before his or her property is sold at an upset tax sale. *In re Tax Claim Bureau of Schuylkill Cnty. Sale of Sept. 29, 2000*, 798 A.2d 845, 849-50 (Pa. Cmwlth. 2002). Thus, when exceptions are filed to a tax sale, the burden is on a tax claim bureau to prove compliance with the Tax Law's notice requirements. *In re 2005 Sale of Real Est. by Clinton Cnty. Tax Claim Bureau Delinq. Taxes*, 915 A.2d 719, 723 (Pa. Cmwlth. 2007).

Section 602 of the Tax Law, 72 P.S. § 5860.602, governs notice of sale and requires a tax claim bureau to provide three types of notice for a tax sale to be valid: published notice at least 30 days before the sale, mailed notice by certified first-class mail, and posted notice. *See In Re Tax Sales by Tax Claim Bureau of Dauph. Cnty.*, 651 A.2d 1157, 1158 (Pa. Cmwlth. 1994). Relevant here are the provisions governing mailed notice and posted notice, which provide:

> (e) In addition to such publications, similar notice of the sale shall also be given by the bureau as follows:
>
> (1) At least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by this act.
>
> (2) If return receipt is not received from each owner pursuant to the provisions of clause (1), then, at least ten (10) days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes. It shall be the duty of the bureau to determine the last post office address known to said collector and county assessment office.

(3) Each property scheduled for sale shall be posted at least ten (10) days prior to the sale.

72 P.S. § 5860.602.

Section 102 of the Tax Law, 72 P.S. § 5860.102, defines "owner" in relevant part as: "the person in whose name the property is last registered, if registered according to law, or, if not registered according to law, the person whose name last appears as an owner of record on any deed or instrument of conveyance recorded in the county office designated for recording[.]" Although the Tax Law does not specifically define "person," the Statutory Construction Act of 1972 defines "person" to include a corporation, partnership, and association, as well as a natural person. 1 Pa. C.S. § 1991.

Under the Uniform Partnership Act,[7] a general partnership can hold title to real property in its own name. 15 Pa. C.S. § 8313(c). Therefore, where a general partnership is the only owner of property listed in a bureau's tax records and the recorded deed, it is the general partnership that is entitled to notice, rather than any individual partners. *FS Partners v. York Cnty. Tax Claim Bureau,* 132 A.3d 577, 582 (Pa. Cmwlth. 2016); *see Krumbine v. Lebanon Cnty. Tax Claim Bureau*, 663 A.2d 158, 160 (Pa. 1995) (holding that only the "grantees listed on the conveyance document . . . could have been the 'owner(s)' of the property to whom the Tax Bureau was required to send certified mail notice of the tax sale"). Further, the Uniform Partnership Act provides that notice to any partner in a general partnership concerning partnership affairs operates, absent fraud by a partner, as sufficient notice to the partnership. 15 Pa. C.S. § 8324.

Accordingly, as Split Rock is the "person in whose name the property is last registered" or "person whose name last appears as an owner of record," Section 102

_____

[7] 15 Pa. C.S. §§ 8301-8365.

of the Tax Law, 72 P.S. § 5860.102, Split Rock is the owner under the Tax Law, which was entitled to certified mail notice. Thus, we must consider whether the Bureau's actions sufficiently complied with the Tax Law's notice requirements regarding its notice to Split Rock. We note that the Tax Law requires a bureau to prove that it made reasonable, but not necessarily extraordinary efforts to provide notice. *Clinton Cnty.*, 915 A.2d at 723.

The General Assembly has established what notice is reasonably required before selling property at a tax sale via the Tax Law. The Tax Law's notice requirements are mandatory and must be strictly construed. *Lackawanna Cnty.*, 255 A.3d at 627-28. One of a bureau's mandatory requirements is its obligation to make reasonable efforts to find an owner pursuant to Section 607.1[8] of the Tax Law when mailed notice is returned or when **doubt exists** that the owner received mailed notice. Section 607.1 of the Tax Law states:

> (a) **When any notification of a pending tax sale** or a tax sale subject to court confirmation **is required to be mailed** to any owner, mortgagee, lienholder or other person or entity whose property interests are likely to be significantly affected by such tax sale, **and** such mailed notification **is** either **returned** without the required receipted personal signature of the addressee **or** under other circumstances raising a significant **doubt as to the actual receipt** of such notification by the named addressee or is not returned or acknowledged at all, then, before the tax sale can be conducted or confirmed, **the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him.** The bureau's efforts **shall include**, but not necessarily be restricted to, **a search** of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, **recorder of deeds office** and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property. When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been

---

[8] Section 607.1 of the Tax Law was added by the Act of July 3, 1986, P.L. 351, 72 P.S. § 5860.607a.

13

successful, a notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in this act.

(b) The notification efforts required by subsection (a) shall be in addition to any other notice requirements imposed by this act.

72 P.S. § 5860.607 (emphasis added). Where a tax claim bureau fails to strictly comply with the notice provision, an owner is deprived of property without due process. *Lackawanna Cnty.*, 255 A.3d at 628.

In *Tracy v. County of Chester, Tax Claim Bureau*, 489 A.2d 1334, 1339 (Pa. 1985), our Supreme Court pointed out,

[s]omehow, over the years, the taxing authorities have lost sight of the fact that it is a momentous event under the United States and the Pennsylvania Constitutions when a government subjects a citizen's property to forfeiture for the non-payment of taxes . . . [Thus, the] collection of taxes . . . may not be implemented without due process of law that is guaranteed in the Commonwealth and federal constitutions; and this due process . . . requires at a minimum that an owner of land be actually notified by the government, if reasonably possible, before his land is forfeited by the state.

*Id.* at 1339. Due process requires a tax claim bureau to conduct a reasonable investigation to ascertain the identity and whereabouts of the last owners of record of property subject to an upset tax sale for the purposes of providing notice to that party. *Schuylkill Cnty.*, 798 A.2d at 849. A tax claim bureau's duty to investigate includes determining the owners of record and then using "ordinary common sense business practices to ascertain proper addresses where notice of the tax sale may be given." *Id.* (citation omitted). A tax claim bureau must go beyond "the mere ceremonial act of notice by certified mail" where notice is obviously not effectively reaching the owners of the property. *Id.* (citation omitted).

14

Under the Tax Law, reasonable efforts to ascertain a property owner's whereabouts include a search of dockets and indices of the county tax assessment offices, recorder of deeds, prothonotary's office, and contacts to any apparent alternate address which may have been written on or in the file pertinent to the property at issue. *Id*. In *In re Tax Claim Bureau of Beaver County Tax Sale September 10, 1990*, 600 A.2d 650, 654 (Pa. Cmwlth. 1991), this Court indicated that where the tax claim bureau had the name of the property owner's attorney in its file, the tax claim bureau "could have easily notified [the property owner] directly or indirectly through her attorney." In failing to contact the property owner's attorney, among other things, we concluded the tax claim bureau's efforts to notify the property owner of the tax sale "were not reasonable as envisioned under the Tax Law." *Id*. at 654.

Here, the Property was owned by Split Rock and the deed did not list the names or contact information for the individual partners. The Bureau sent the First Notice of Return and Claim, which was returned. Once the First Notice of Return and Claim was returned, the Bureau was obligated to take reasonable efforts to ascertain the owner's address to ensure notice. In an attempt to fulfill this requirement, the Bureau Director tried to locate an additional address or contact information for Split Rock by researching files in the Bureau, the tax assessment office, and with the recorder of deeds. Purchaser argues these actions fulfilled the Bureau's requirements. We cannot agree.

Our review of the record leads us to conclude that the Bureau did not make reasonable efforts to locate Split Rock's whereabouts. When the first certified mailing to the Connecticut Address was returned undelivered, the Bureau was put on notice that the Connecticut Address was not Split Rock's correct address.

15

Purchaser asserts the Bureau's reasonableness should be determined based upon the information available to the Bureau at the time. Our review of the record, however, reveals that the Bureau had information available to it that it failed to pursue. This included the deed to the Property, which contained three leads: identification of a law firm; a relationship between the grantor and the grantee such that it is irrelevant whether the law firm represented grantor, grantee, or both; and identification of a public notary.

The deed indicates Split Rock is the grantee, with the document to be returned to "Gerstein Grayson & Cohen LLP, 1288 Route 73 South, Suite 301, Mount Laurel, NJ," presumably grantee's attorney. R.R. at 204a. Even if the Bureau Director was not familiar with the common practice of grantee's attorney being listed as the person to whom the document should be returned, the last page of the deed also indicates, "[t]he purpose of this Deed is to transfer the property from the Estate of Dominick Vittese to a beneficiary of the Estate," and the deed is signed by "Lisa Clark, Executrix of the Estate of Dominick Vittese." *Id*. at 207a. The attorney's contact information alone is sufficient to find that the Bureau failed to make reasonable efforts, but additionally, the deed indicates a relationship between the grantor and the grantee. While a deed return is typically delivered to a grantee's counsel, we note the footer of each page of the deed references "estate administration," which indicates the deed was drafted by the grantor's counsel. Accordingly, even if the Bureau Director did not think the attorney listed was the owner's attorney, but rather thought it was the grantor's attorney, the Bureau still should have contacted the firm because the estate's (grantor's) attorney knew the property was being transferred from "the Estate . . . to a beneficiary of the Estate." *Id*.

16

Finally, and keeping in mind that per the plain language of the deed, the Executrix was transferring the property to a beneficiary of the Estate, the deed also bore contact information for Kathryn A. Sclar, Notary Public, County of Burlington, New Jersey, who acknowledged the Executor's signature. *Id*. While it is true the public notary was linked to the grantor, not the grantee, the deed tells us the grantor and grantee were linked. Because the Bureau had access to the deed with this information, the Bureau could have easily reached out to the law firm or the public notary to attempt to identify Split Rock's partners or ascertain an alternative address. This information was readily available to the Bureau, and the Bureau failed to take these reasonable steps to ensure Split Rock received notice. Accordingly, the Bureau's efforts to notify Split Rock were not reasonable as envisioned under the Tax Law.[9]

## III. CONCLUSION

The trial court committed an error of law when it held Split Rock did not have standing. Furthermore, the trial court abused its discretion when it concluded the two notices were reasonable and that additional efforts were not required. Significant doubt exists as to whether Split Rock actually received notice. This is why the Bureau's Director undertook additional efforts to discover the whereabouts of the owner, but those efforts fell short of being reasonable as the efforts did not include contacting the law firm whose name was clearly visible on the deed, which was located in the recorder of deeds. Accordingly, we reverse.

_____
STACY WALLACE, Judge

---

[9] Because we conclude the trial court erred in finding the Bureau took reasonable efforts to put Split Rock on notice, we need not address Split Rock's remaining issues.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Tax Claim Bureau's Sales of : 
Real Estate for Unpaid Taxes Levied : 
for the Year 2018 : 
  : 
Daniel R. Clark and Victoria Clark :     No.  598 C.D. 2021
Bolger trading as Split Rock Family : 
Partnership, : 
                     Appellants : 
          v. : 
  : 
County of Carbon, Tax Claim Bureau : 

# **O R D E R**

     **AND NOW**, this 22nd day of February 2023, the May 17, 2021 order of the Carbon County Court of Common Pleas is **REVERSED**.

 

                                  _____
                                  STACY WALLACE, Judge